# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

**JEFFREY K. COCHELL,**

        Plaintiff,

        v.

**COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,**

        Defendant.

Case No. 3:14-cv-01201-ST

**OPINION AND ORDER**

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Jeffrey K. Cochell ("Cochell"), seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 USC §§ 401-433, and Supplemental Security Income ("SSI") under Title XVI of the SSA, 42 USC §§ 1381-1383f. This court has jurisdiction to review the Commissioner's decision pursuant to 42 USC § 405(g) and § 1383(c)(3). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c) (docket #7).

1 – OPINION AND ORDER

The Commissioner has filed a Motion to Remand for further administrative proceedings (docket #26).  For the reasons set forth below, that motion is DENIED and the Commissioner's decision is REVERSED and REMANDED for award of benefits.

## ADMINISTRATIVE HISTORY

Cochell protectively filed for DIB and SSI on Tuesday, July 27, 2010, alleging a disability onset date of April 3, 2010.  Tr. 219-30.[1]  His applications were denied initially and on reconsideration.  Tr. 90-91, 125-26, 129-36, 142-43.  On November 15, 2012, a hearing was held before Administrative Law Judge ("ALJ") Jo Hoenninger.  Tr. 21-61.  The ALJ issued a decision on December 7, 2012, finding Cochell not disabled.  Tr. 9-20.  The Appeals Council denied a request for review on June 4, 2014.  Tr. 1-4.  Therefore, the ALJ's decision is the Commissioner's final decision subject to review by this court.  20 CFR §§ 404.981, 416.1481, 422.210.

## BACKGROUND

Born in 1976, Cochell was 33 years old on the alleged onset date.  Tr. 219.  He has a college education and past relevant work experience as a self-employed guitar musician, apparel line manager, and customer service representative.  Tr. 29-30, 51-52, 246.  Cochell alleges that he is unable to work due to combined impairments from a brain injury sustained during a car accident.  Tr. 245.

I.     **Medical Records**

       A.     **Dr. Conti**

While driving his car on April 3, 2010, Cochell was rear-ended.  Tr. 299.  The airbags did not deploy, causing him to hit the back of his head.  *Id.*  He reported to the

---

[1]  Citations are to the page(s) indicated in the official transcript of the record filed on December 3, 2014 (docket # 12).

emergency room two hours later complaining of an occipital headache, neck pain, low back pain, and mild dizziness.  Tr. 299-300.  For the next six months, he continually sought medical attention from various specialists for headaches, cognitive problems, fatigue and increased depression.  He eventually established mental health treatment in October 2010 with Paul M. Conti, M.D., a psychiatrist and neurologist at Healthworks NW.  Tr. 462-69, 878-94.

On October 7, 2010, Dr. Conti wrote a psychiatric evaluation report based on an interview and evaluation of Cochell and a review of records, including a detailed report from neuropsychologist Sharon M. Labs, Ph.D..  Tr. 465-69.  Dr. Conti noted that Cochell's "[s]entences will at times be run on [and] there is some mild circumlocution."  Tr. 467.  In addition, Cochell's thought process was "[g]enerally linear, although there is some circumstantiality."  *Id.*  Cochell's cognition was "[n]otable for deficits in executive function and memory."  *Id.*  Dr. Conti stated Cochell "has clear evidence of left prefrontal dysfunction [and] evidence of disruption of corticostriatolimbic affective connections."  *Id.*  Ultimately, Dr. Conti diagnosed Cochell with mood disorder secondary to traumatic brain injury ("TBI"); premorbid major depressive episode, recurrent, moderate; and post-concussion syndrome due to motor vehicle accident.  Tr. 468.

Dr. Conti wrote another evaluation of Cochell in November 2012 after treating him regularly for nearly two years.  Tr. 838-40.  Based on that treatment and a review of medical records from various specialists prior to and after the car accident through October 2012, he opined that Cochell's "symptoms have rendered him incapable of sustaining competitive employment . . . .  since his motor vehicle accident in April of 2010."  Tr. 839.  Reiterating his conclusions from the October 2010 report, he opined that "[t]he brain areas affected by

Mr. Cochell's traumatic brain injury would predictably lead to executive function problems, auditory and general memory impairment, and fine motor deficits." Tr. 839.  He concluded that "both clinical experience and two different neuropsychological test results corroborate significant impairments in memory function and perceptual reasoning." *Id.*  Despite reporting "some improvement in his cognitive functioning, the accident clearly exacerbated his long-standing depression." *Id.*  He explained that Cochell:

> would have difficulty learning new information, and in a work setting would likely need significantly more time than the average person to learn a new task.  Even if he is able to learn a new task, I would expect him to be slower, and perhaps inconsistent, in performing it.  He would also have great difficulty being flexible or adjusting to changes. Most significantly, the pressures inherent in a work setting would likely make him easily overwhelmed, significantly reduce his productivity, and cause him to call in sick or go home early several times per month.  Frankly, it would surprise me if he lasted longer than two-to-three weeks in any work setting before he quit or was fired.

Tr. 840.

**B.    Dr. Perrillo**

In May 2011, Richard J. Perrillo, Ph.D., a neuropsychologist, examined Cochell and reviewed his extensive medical records. Tr. 842-77.  Dr. Perrillo diagnosed Cochell with moderate brain dysfunction, posttraumatic stress disorder with moderate/severe symptoms and interference in functioning, and moderate/severe psychological distress.  Tr. 865-66. Dr. Perrillo stated Cochell had "mild and moderate impairments primarily in inability to inhibit competing stimuli, complex focused attention, perceptual abstract reasoning and the ability for self monitoring, and visual scanning and planning." Tr. 858-59.  He further predicted that Cochell "will lose cognitive proficiency especially when the cognitive load increases.  His moderate inability to shift from one idea to the next will result in being rigid in persisting in mistakes without the benefit of feedback and learning." Tr. 859.

Dr. Perrillo specified that Cochell had deficiencies in the following executive functions: accuracy, reaction time, non-verbal memory, perceptual matching, spatial memory, complex attention and continual focus, logical analysis, and visual scanning. *Id.* He ultimately opined that Cochell's disability status was "[p]ermanent" with

> 100% disability from a neuropsychological and clinical psychological perspective with selective frontal, temporal, parietal and occipital impairments and general diffuse brain damage . . . . It is doubtful that even if his psychology were to clear up, that he would be able to compete and be productively employed. Brain effects are apparent.

Tr. 866.

## II.    **Hearing Testimony**

### A.    **Cochell's Testimony**

At the hearing on November 15, 2012, Cochell testified that since the April 2010 car accident, he had worked part-time as a musician and as a receptionist in an acupuncturist's office. Tr. 31-32. As a musician, he had some success the first two summers after the accident, playing seven to eight weddings each summer as well as a couple of additional shows at wineries, bars, and coffee shops each month. Tr. 32-33. At the time of the hearing, he had approximately one performance every several months, but had none currently scheduled. Tr. 29, 32-33. After a wedding performance, which took up to one full day with planning, transportation, and actual performance, he was exhausted for several days, and estimated that he could perform at most only once every four days. Tr. 33-34, 44-45.

In addition, Cochell worked as a receptionist for around six hours one to two days per week from February to July 2012. Tr. 31. He ultimately left that job because of delusions that he was being recorded at home and at work. Tr. 31-32.

Cochell is unable to work because he has difficulty sustaining energy, paying attention, remembering details and focusing, and getting distracted and easily overwhelmed. Tr. 36, 49.  His depression and stress also would interfere with his ability to work.  Tr. 37. Furthermore, he naps a couple of hours each day, and gets confused and overwhelmed more easily than usual when he is unable to nap.  Tr. 43-44.

### B.    Vocational Expert Testimony

The ALJ asked the Vocational Expert ("VE") what jobs the following hypothetical individual could perform:  limited to light work, except occasional overhead reaching with the left upper extremity; short, simple instructions; simple tasks; minimal changes to the work setting; not competitive production paced work; only occasional interaction with the public and coworkers; and without concentrated exposure to excessive noise.  Tr. 54, 56. The VE opined that such an individual could perform unskilled work as a motel cleaner, an electronics worker, and price marker.  Tr. 56-57.  The VE also explained that a competitive work environment allows only one day of absence per month and that the three identified unskilled jobs would probably tolerate even fewer absences per month.  Tr. 58-59.

### DISABILITY ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 USC § 423(d)(1)(A).  The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 CFR §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity.  If so, the claimant is not disabled.  20 CFR §§ 404.1520(a)(4)(i) & (b), 416.920(a)(4)(i) & (b).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement.  20 CFR §§ 404.1520(a)(4)(ii) & (c), 416.909, 416.920(a)(4)(ii) & (c).  Absent a severe impairment, the claimant is not disabled.  *Id*.

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations.  20 CFR § § 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d); 20 CFR Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by his or her impairments.  20 CFR §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant work.  20 CFR §§ 404.1520(a)(4)(iv) & (e), 416.920(a)(4)(iv) & (e).  If the claimant cannot perform past relevant work, then at step five, the ALJ must determine if the claimant can perform other work in the national economy.  20 CFR §§ 404.1520(a)(4)(v) &

(g), 416.920(a)(4)(v) & (g); *Bowen v. Yuckert*, 482 US 137, 142 (1987); *Tackett*, 180 F3d at 1099.

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that jobs exist in the national economy within the claimant's RFC. *Id*. If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g), 416.960(c).

## ALJ'S FINDINGS

At step one, the ALJ concluded that Cochell has not engaged in substantial gainful activity since April 3, 2010, the date that his application was protectively filed. Tr. 11.

At step two, the ALJ determined that Cochell has the severe impairments of traumatic brain injury, organic brain disorder, and spine disorder. Tr. 11-14.

At step three, the ALJ concluded that Cochell does not have an impairment or combination of impairments that meets or equals any of the listed impairments. Tr. 14-15. The ALJ found that Cochell has the RFC to perform light work with the following additional limitations: occasional reaching overhead with left upper extremity; short simple instructions; simple tasks; minimal changes in work setting; no competitive production-pace work; occasional interaction with the public and coworkers, and no concentrated exposure to excessive noise. Tr. 15-18.

Based upon the testimony of the VE, the ALJ determined at step four that Cochell's RFC precluded him from returning to his past relevant work. Tr. 18.

At step five, the ALJ found that considering Cochell's age, education, and RFC, he was capable of performing unskilled work as a motel cleaner/housekeeper, electronics worker, and price marker.  Tr. 19.

Accordingly, the ALJ determined that Cochell was not disabled at any time through the date of the decision.  Tr. 20.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  42 USC § 405(g); *Lewis v. Astrue*, 498 F3d 909, 911 (9th Cir 2007).  This court must weigh the evidence that supports and detracts from the ALJ's conclusion.  *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998).  The reviewing court may not substitute its judgment for that of the Commissioner.  *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F3d 1194, 1205 (9th Cir 2008), citing *Parra v. Astrue*, 481 F3d 742, 746 (9th Cir 2007); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).  Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "'supported by inferences reasonably drawn from the record.'"  *Tommasetti v. Astrue*, 533 F3d 1035, 1038 (9th Cir 2008), quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004); *see also Lingenfelter*, 504 F3d at 1035.

## DISCUSSION

Cochell seeks to reverse and remand the Commissioner's decision for an award of benefits because the ALJ erred by rejecting the opinions of his treating physician, Dr. Conti,

and examining physician, Dr. Perrillo, and by relying on VE testimony that was inconsistent with the RFC determination.

The Commissioner concedes that the ALJ primarily erred by relying on the VE's testimony which conflicted with the *Dictionary of Occupational Titles* regarding the amount of noise exposure in the representative occupations of motel cleaner, electronics worker, and price marker. Tr. 19, 56; U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991), DOT Codes 323.687-014, 726.687-010, 209.587-034. However, the Commissioner argues that further administrative proceedings are necessary for additional VE testimony to resolve this inconsistency or, in the alternative, to determine if any other representative occupations are compatible with Cochell's RFC. In addition, the Commissioner argues that further administrative proceedings are necessary to resolve the inconsistency between the medical opinions of Drs. Conti and Perrillo and Cochell's activities of daily living ("ADL").

However, as discussed below, the ALJ erred by failing to provide legally sufficient reasons to reject the opinions of Drs. Conti and Perrillo. Because neither of those opinions conflict with Cochell's ADL, no outstanding issue remains to be resolved. When those opinions are credited as true, it is clear that Cochell is disabled from any occupation, rendering any additional VE testimony unnecessary. Therefore, no further administrative proceedings would be useful.

I.    **Physicians' Opinions**

    A.    **Legal Standard**

The weight given to the opinion of a physician depends on whether it is from a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician who has a greater opportunity to know and

observe the patient as an individual. *Orn v. Astrue*, 495 F3d 625, 632 (9th Cir 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id*; *Widmark v. Barnhart*, 454 F3d 1063, 1066 (9th Cir 2006). Even if the opinion is contradicted by another physician, the ALJ may not reject it without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F3d at 632; *Widmark*, 454 F3d at 1066.

The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark*, 454 F3d at 1066 n2. However, it may serve as substantial evidence when it is supported by and consistent with other evidence in the record. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F3d 595, 600 (9th Cir 1999).

### B.    Dr. Conti

Although Dr. Conti has treated Cochell since 2010, the ALJ gave only "some weight" to his opinion for several reasons: (1) "in October 2010, Dr. Conti recommended that the claimant go to vocational rehabilitation, which indicated a belief that [Cochell] could work;" (2) his opinion that Cochell "is incapable of sustaining employment is a determination reserved for the commissioner;" and (3) his "opinion is inconsistent with the record as a whole, particularly [Cochell's] ability to care for himself, maintain self-employment as a musician, run, do yoga, play basketball, and travel unassisted to California with difficulties." Tr. 17 (citation omitted). The ALJ also stated that on October 22, 2010, Cochell "reported his depression was well controlled and that his mood had improved with activity and that his stress [was] down considerably." Tr. 17 (alteration in original), quoting Ex. 33F/pp. 4-5. The ALJ added that "for most office visits the claimant was seen by Dr.

Conti's assistant, Jamey Burris-Fish, PMHNP, not by Dr. Conti" and that "[i]t is also apparent that Dr. Conti was not aware of claimant's report to Western Psychological in September 2012 of 'using alcohol for 19 months, 3 to 4 days per week.' Overall the claimant's physical and mental functioning is far more independent and functional than opined by Dr. Conti." *Id* (citation omitted). None of these reasons withstands scrutiny.

The ALJ apparently equated Dr. Conti's recommendation that Cochell work with vocational rehabilitation ("VR") as indicating a belief that Cochell was not disabled. However, VR is a service for people with disabilities. State of Oregon Department of Human Services, Vocational Rehabilitation, What is Vocational Rehabilitation (VR)?, http://www.oregon.gov/dhs/employment/VR/Pages/About-VR.aspx. Thus, Dr. Conti's recommendation for VR is consistent with his opinion on Cochell's limitations and provides no basis to discount his opinion.

The ALJ is correct that a physician's conclusory statement that a claimant is "disabled" or "unable to work" is not binding on the Commissioner's disability determination. 20 CFR § 416.927(d)(1). However, a physician's opinion regarding the likelihood of a claimant to maintain gainful employment based on his or her impairments is not a conclusory statement and should be considered. *Hill v. Astrue*, 698 F3d 1153, 1160 (9th Cir 2012). Dr. Conti opined that Cochell's "symptoms have rendered him incapable of sustaining competitive employment, explained to me as a 40-hour work week, 8-hour day, two 15-minute breaks, a lunch break and no more than two absences per month." Tr. 839. Dr. Conti specified those symptoms in detail in his reports. Hi opinion is not conclusory, but rather conveys his belief, based on nearly two years of treatment and extensive testing, that Cochell lacks certain mental functions required for competitive employment.

Because the ALJ identified an inconsistency between "the record as a whole" and some of Cochell's ADL, the Commissioner urges a remand for further administrative proceedings in order to resolve an alleged inconsistency between Dr. Conti's opinion and Cochell's ADL. However, the ADL noted by the ALJ do not relate to the limitations Dr. Conti assessed. Dr. Conti specifically stated that Cochell would have difficulty learning new information and, if he was able to learn a new task, would perform it slowly and inconsistently. Cochell played music, ran, did yoga, and played basketball before his accident. Tr. 267. Continuing such activities after his accident would not contradict Dr. Conti's opinion that Cochell would have difficulty learning and performing *new* tasks. In addition, most of the activities noted by the ALJ require physical exertion rather than mental functioning. Although Dr. Conti predicted Cochell's TBI could cause fine motor deficits, he primarily identified mental or emotional limitations. To the extent that Cochell's ADL are physical rather than mental, they are irrelevant to Dr. Conti's opinion on Cochell's mental functioning.

Moreover, Dr. Conti opined that Cochell's mental impairments would cause him to be easily overwhelmed at work, which would impair his productivity and cause him to miss several days per month. Tr. 840. The activities the ALJ noted are not comparable to a work environment and likely would not overwhelm Cochell in the same way as a competitive job. *See Orn*, 495 F3d at 639 (to discredit claimant's testimony with evidence of ADL, the ADL must contradict claimant's testimony or be transferable to a work setting and constitute a substantial part of claimant's day). Thus, even as represented by the ALJ, Cochell's ADL do not contradict Dr. Conti's opinion regarding Cochell's limitations.

13 – OPINION AND ORDER

Furthermore, the record reflects that Cochell is far less active than the ALJ represented. First, Cochell's ability to care for himself is questionable. When he arrived at his appointment with Dr. Labs on August 26, 2010, he presented with "fair hygiene." Tr. 753. But at his appointment with Burris-Fish on July 3, 2012, he had "poor hygiene and grooming appears unkempt." Tr. 882. In addition, at the time of the hearing, Cochell lived with his aunt. Tr. 28. Second, at his busiest since the accident, Cochell was booking only seven to eight wedding performances per summer and a few additional performances at coffee shops, bars, and wineries, totaling "a couple of gigs a month." Tr. 16, 33. Each "gig" takes about a full day, and couple of days per month does not constitute a substantial part of Cochell's life. Third, Cochell consistently reported to his medical providers that he is no longer as active as he was before the accident. *E.g.,* Tr. 749 ("He is significantly less active."). Although Cochell stated he was doing "yoga 3 times a week" in April 2010, the next month he told his counselor, Connie Chalmers, M.S., that he "stopped going to yoga." Tr. 318, 813. As of August 2010, he "no longer play[s] basketball at all" and goes to the gym "a couple of times per month." Tr. 267. Fourth, although Cochell traveled to California, the ALJ acknowledged that he did so "with difficulties," and the reason for the trip was to undergo neuropsychological testing. Tr. 17, 815, 842. In sum, Cochell's report of his ADL throughout the medical record is consistent, and the ADL themselves are not significant enough to contradict or discredit Dr. Conti's medical opinion on Cochell's limitations.

The other reasons given by the ALJ similarly lack merit. The record indicates that Cochell was seen by Burris-Fish only twice (6/22/12, Tr. 884; 7/3/12, Tr. 882-83) for urgent medication management appointments and was primarily seen by Dr. Conti himself over a

nearly two-year period.  Tr. 462-69, 880-92.  With respect to alcohol use, a review of the

report to Western Psychological reflects that Cochell actually stated "that he has *not* used

alcohol in 19 months as prior to this time he consumed alcohol approximately 3-4 nights per

week in varied amounts."  Tr. 790 (emphasis added).  The handwritten "therapist note[]"

states Cochell "*quit* using alcohol 19 months - 3-4 days per week."  Tr. 795 (emphasis

added).

        Regarding the supposed improvement of Cochell's depression, the portion of the

medical record cited by the ALJ (Ex. 33F/pgs. 4-5 at Tr. 881-82) are actually notes from

two separate visits in July 2012, neither of which appear to include a report that Cochell's

depression is well-controlled or that his mood or stress level has improved.  Additionally,

Cochell saw Dr. Conti on October 21, not October 22, 2010.  Tr. 464.  At that appointment,

the medication Dr. Conti prescribed at their first meeting appeared to be helping, as Cochell

reported decreased sedation and napping as well as a possible increase in focus.  *Id.*  He also

told Dr. Conti "I've noticed it's different . . . a couple of good things," and "still some low

mood, but more hopefulness."  *Id.*  Dr. Conti did not state at this appointment that Cochell's

depression was "well-controlled," and this court has been unable to locate any such note

from any medical provider.

        In addition, Cochell's depression symptoms, as well as his reporting of them to

Dr. Conti, were consistent throughout the treatment period.  At his appointment on

November 4, 2010, Cochell reported "mild improvement" and on November 16, reported his

mood as "ok."  Tr. 462-63.  On December 20, 2010, Dr. Conti noted Cochell "was doing

better and now doing worse."  Tr. 892.  On January 3, 2011, Cochell had shown "some

improvement on Gabapentin but still some depression."  Tr. 891.  Later that month, Cochell

stated he had "no change in energy or mood, but 'I'm not in the fog as much.'"  Tr. 890.  On February 21, 2011, the Adderall seemed to be helping, "although effects of TBI still present."  Tr. 889.  In July 2011, Cochell showed greater improvement, however on November 10, 2011, he appeared in a mild depressive state with dysphoria.  Tr. 886-87.  Cochell expressed "frustration [regarding] cognitive deficits (decreased speed and [illegible]) and external stressors."  Tr. 886.  In December 2011, Cochell again showed mild improvement but expressed "frustration."  Tr. 888.  He said that he was "just getting by" and "in survival mode."  *Id.*  In March 2012, although the Adderall was still helping, Cochell's anxiety was causing decreased appetite and sleep latency.  Tr. 885.  The rest of the treatment notes from Healthworks NW providers focus on Cochell's paranoid delusions and psychosis.  Tr. 880-84.  Dr. Conti's November 2012 report incorporated all of these visits.  Tr. 838-40.  Although the record reflects that Cochell's depression occasionally showed minor improvements, his symptoms persisted throughout the relevant period, contrary to the ALJ's statement.

In sum, none of the reasons for the ALJ to discount Dr. Conti's opinion are legitimate.  Instead, the record as a whole supports Dr. Conti's opinion that the limitations resulting from Cochell's impairments would preclude him from competitive employment.

## C.    Dr. Perrillo

The ALJ also gave Dr. Perrillo's opinion "little weight" because

> no other treating source has assessed the claimant as disabled or unable to perform basic work activities; Dr. Perrillo is not a treating source, and his evaluation was the one and only time he met with the claimant.  Lastly, it does not appear that Dr. Perrillo was made aware of the significant functioning by the claimant, as demonstrated by claimant's [ADL] and self employment as a musician.  Moreover, the record as a whole does not support Dr. Perrillo's opinion.  Further, a determination of disability is reserved for the Commissioner.

Tr. 16-17.

As with Dr. Conti, none of these reasons withstands scrutiny.

First, the ALJ was simply wrong that no other treating source assessed Cochell as unable to perform basic work activities.  Dr. Conti was a treating source and assessed Cochell as unable to sustain competitive employment or perform many basic work activities.  Tr. 839-40.

Second, all medical opinion evidence, including an examining physician's opinion, must be considered, including opinions rendered after a single examination.  *See Tommasetti*, 533 F3d at 1041.  "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  *Widmark*, 454 F3d at 1066 (alteration in original), quoting *Lester v. Chater*, 81 F3d 821, 830-31 (9th Cir 1995).  The fact that Dr. Perrillo is an examining physician is not a legitimate reason to give his opinion little weight.  Moreover, the ALJ gave "some weight to the assessments of the State Agency medical and psychological consultants as their opinions were based on a review of the medical evidence of record."  Tr. 18.  Dr. Perrillo, who met, interviewed, observed, and examined Cochell over a two-day period, also based his opinion on a review of the medical record.  Tr. 842-45 (summary of records).  It defies logic to give less weight to Dr. Perrillo's opinion because he only met Cochell once than to the opinion of physicians who never met Cochell.  *Lester*, 81 F3d at 832.

Third, that Dr. Perrillo was unaware of Cochell's functioning is pure speculation without any support in the record.  Additionally, as with Dr. Conti, Cochell's part-time

employment as a musician and ADL, including occasional exercise, do not contradict
Dr. Perrillo's assessment.

Fourth, the record as a whole does not contradict Dr. Perrillo's opinion, but actually
supports it.

Finally, although the determination of disability is reserved for the Commissioner, in
addition to opining that Cochell was "100%" disabled, Dr. Perrillo identified numerous
specific limitations resulting from Cochell's impairments.  Dr. Perrillo's opinion on
Cochell's impairments and limitations are not conclusory.

In sum, the ALJ failed to provide adequate reasons to discount Dr. Perrillo's opinion.

## II.    **Remand**

The decision whether to remand for further proceedings or for immediate payment of
benefits is within the discretion of the court.  *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir
2000).  The issue turns on the utility of further proceedings.  A remand for an award of
benefits is appropriate when no useful purpose would be served by further administrative
proceedings or when the record has been fully developed and the evidence is insufficient to
support the Commissioner's decision.  *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F3d
1135, 1137-38 (9th Cir 2011), quoting *Benecke v. Barnhart*, 379 F3d 587, 593 (9th Cir 2004).
The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to
determine if a claimant is disabled under the Act.  *Id* at 1138.

Under the "crediting as true" doctrine, three conditions must be satisfied in order for
a district court to remand for an  award of benefits:

> (1) the record has been fully developed and further administrative
> proceedings would serve no useful purpose; (2) the ALJ has failed to
> provide legally sufficient reasons for rejecting evidence, whether
> claimant testimony or medical opinion; and (3) if the improperly

discredited evidence were credited as true, the ALJ would be required
to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F3d 995, 1020 (9th Cir 2014) (citations omitted).  The "crediting as
true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court "some
flexibility."  *Connett v. Barnhart*, 340 F3d 871, 876 (9th Cir 2003), citing *Bunnell v.
Sullivan*, 947 F2d 341, 348 (9th Cir 1991) (*en banc*).  That flexibility allows the court "to
remand for further proceedings when the record as a whole creates serious doubt as to
whether the claimant is, in fact, disabled within the meaning of the Social Security Act."
*Garrison*, 759 F3d at 1021.

Relying on *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F3d 1090 (9th Cir 2014),
the Commissioner argues that the court should not credit the medical opinions as true due to
the need to first resolve inconsistencies between the opinions of Drs. Conti and Perrillo and
Cochell's ADL.  This court disagrees.  In *Treichler*, the ALJ found that Treichler was not
credible concerning his symptoms.  The Ninth Circuit held that the ALJ erred by failing "to
provide a discussion of the evidence and the reason or reasons upon which his adverse
determination is based."  *Id* at 1103 (citations and quotation marks omitted).  Despite the
error, the Ninth Circuit refused to credit Treichler's testimony as true, finding "significant
factual conflicts in the record between Treichler's testimony and objective medical
evidence."  *Id* at 1104.  "These are exactly the sort of issues that should be remanded to the
agency for further proceedings."  *Id* at 1105, citing *Andrews v. Shalala*, 53 F3d 1035, 1039
(9th Cir 1995).  Although Treichler argued there were no outstanding issues to be resolved
when his testimony was credited as true, the Ninth Circuit advised that it "assess[es]
whether there are outstanding issues requiring resolution *before* considering whether to hold

that the claimant's testimony is credible as a matter of law." *Id*, citing *Garrison*, 759 F3d at 1020; *Connett*, 340 F3d at 876.

This case is distinguishable from *Treichler* in several crucial respects.  First, in *Treichler*, the court was unable to meaningfully review the ALJ's credibility finding because the ALJ failed to provide any reasons.  Here, the ALJ gave specific reasons for rejecting the opinions of Drs. Conti and Perrillo which, as discussed above, are not supported by the record.  It is not appropriate to "remand for the purpose of allowing the ALJ to have a mulligan." *Garrison*, 759 F3d at 1021.  Second, in *Treichler*, the claimant's testimony conflicted with the objective medical evidence.  Here, as discussed above, the opinions of Drs. Conti and Perrillo do not conflict with Cochell's ADL.  Third, as the Commissioner points out, Cochell does not dispute the ALJ's finding on his own credibility but rather the weight given to the opinions of his physicians.  As the Ninth Circuit has repeatedly stated, "[w]here the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'" *Lester*, 81 F3d at 834, quoting *Hammock v. Bowen*, 879 F2d 498, 502 (9th Cir 1989).

The record here is fully developed and free from ambiguities, conflicts, or issues of fact.  No useful purpose would be served by further administrative proceedings.  The ALJ failed to provide legally sufficient reasons for rejecting the opinions of Drs. Conti and Perrillo, and both physicians opined that the limitations from Cochell's severe impairments render him incapable of substantial gainful employment.  Tr. 839 (Dr. Conti), 866 (Dr. Perrillo).

If those medical opinions are credited as true, the ALJ would be required to find Cochell disabled.  Dr. Conti expressed that Cochell's difficulties would cause him to call in

sick or go home early several times per month.  Tr. 840.  The VE testified that an employee who missed more than one day of work per month would be unable to sustain competitive employment, and that an employer of unskilled workers would probably tolerate even fewer absences.  Tr. 58-59.  The VE thus "answered a question describing a hypothetical person with the RFC that the claimant would possess were the relevant testimony taken as true." *Garrison*, 759 F3d at 1021 n28, citing *Lingenfelter*, 504 F3d at 1041; *Varney v. Sec'y of Health & Human Servs.*, 859 F2d 1396, 1401 (9th Cir 1988).  Accordingly, a remand for an award of benefits is appropriate.

## **ORDER**

For the reasons discussed above, the Commissioner's Motion to Remand (docket #26) is DENIED, and the Commissioner's decision is REVERSED and REMANDED pursuant to sentence four of 42 USC § 405(g) for an award of benefits.

DATED September 8, 2015.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge